IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIMBERLY LETKE,                          *

    Plaintiff,                       *

       v.                        *          Civil Action No. RDB-12-3799

WELLS FARGO                              *
HOME MORTGAGE, INC.,

    Defendant.                       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Kimberly Letke, proceeding *pro se*, brings this action against Wells Fargo Home Mortgage ("Wells Fargo"), alleging breach of contract under the Home Affordable Modification Program ("HAMP"), 12 U.S.C. § 5219(a) *et. seq.*, and violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*  Pending before this Court are Defendant's Motion to Dismiss the Amended Complaint (ECF No. 31), Plaintiff's Motion to Proceed to Jury Trial (ECF No. 38), Plaintiff's Motion to Have Questions Answered and Jury Trial Date Set (ECF No. 39), Plaintiff's Motion to Schedule a Hearing and Add Defendant (ECF No. 40), and Plaintiff's Motion for Emergency Mediation and/or Proceed to a Jury Trial and/or Award Letke $458,000 (ECF No. 41).  The Court has reviewed the parties' submissions and finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  Defendant's Motion to Dismiss (ECF No. 31) is GRANTED IN PART and DENIED IN PART; specifically, the motion is granted with respect to Plaintiff's Fair Housing Act claim and denied with respect to Plaintiff's breach of contract claim under the Trial Payment Plan ("TPP")

1

established under the HAMP guidelines. Plaintiff's Motion to Proceed to Jury Trial (ECF No. 38), Motion to Have Questions Answered and Jury Trial Date Set (ECF No. 39), and Motion to Schedule a Hearing and Add Defendant (ECF No. 40) are DENIED.  Plaintiff's Motion for Emergency Mediation and/or Proceed to a Jury Trial and/or Award Letke $458,000 (ECF No. 41) is DENIED IN PART.  Specifically, the motion is denied with respect to Plaintiff's request to proceed to a jury trial or award Plaintiff $458,000; however, Defendant must notify the Court within ten days of the date of this Opinion and Order whether Defendant agrees to mediation on the remaining breach of contract claim.


BACKGROUND

Plaintiff Kimberly Letke filed this action *pro se* after Defendant Wells Fargo failed to modify her loan under the Home Affordable Modification Program ("HAMP")[1] and subsequently instituted a foreclosure action against her.  *See generally* Compl., Dec. 27, 2012, ECF No. 1.  Plaintiff also asserts Wells Fargo impermissibly discriminated against her, in violation of the Fair Housing Act ("FHA").  Am. Compl. 20, 25, Dec. 23, 2013, ECF No. 21.

Plaintiff is a single woman living in Baltimore City.  Compl. ¶ 3, ECF No. 1.  Plaintiff was the owner of a home in the 4300 block of Valley View Avenue Baltimore, Maryland 21206.  In 2006, Plaintiff sold her home for $235,000 and bought a property located at 1607 Bridewells Court, Joppa, Maryland 21085 for $380,000.  Am. Compl. 13, ECF No. 21.

---

[1] As will be explained in more detail *infra*, the Home Affordable Modification Program allows homeowners who are in default or facing an imminent risk of default to avoid foreclosure by obtaining permanent loan modifications that reduce monthly payments. The Trial Payment Plan is a three month period during which individuals interested in loan modification may pay the modified mortgage price.  If the mortgagor makes timely payments in full, the loan modification may become permanent.

Plaintiff made a $130,000 down payment and mortgaged the $250,000 balance through Wells Fargo. *Id.* Plaintiff committed to $2,568 in monthly mortgage payments. *Id.* Subsequently, Plaintiff began struggling to make her mortgage payments and became delinquent on her mortgage. In May 2010, Plaintiff requested a home loan modification under the HAMP program, but she claims that after months of transmitting documents, making payments, and communicating with Wells Fargo, Defendant denied her home loan modification request. *Id.* at 14–17.

In November 2011, Wells Fargo pursued a foreclosure sale. *Id.* at 14. In response, Plaintiff sought to refinance her mortgage again under the HAMP program and believed that she refinanced to a 40-year mortgage with 2 % interest. *Id.* On November 17, 2011, a Wells Fargo agent allegedly advised Plaintiff that she was approved for a HAMP loan. *Id.* at 30. On January 9, 2012, Wells Fargo contacted Letke to inform her that the loan modification needed further documentation. *Id.* at 15. Despite Letke's pending loan modification approval, Shapiro & Burson LLP, pursuant to their representation of Wells Fargo, instituted foreclosure actions against Plaintiff in 2012. *Id.* Letke requested mediation, which was conducted in the Harford County Circuit Court. *Id.* at 15, 30.[2]

Plaintiff originally filed this action against Defendant Wells Fargo Home Mortgage ("Wells Fargo"), John Stumpf ("Stumpf"), and Adam Velde ("Velde") on December 27, 2012. *See generally* Compl., ECF No. 1. On March 25, 2013, Defendant Wells Fargo filed a Motion for a More Definite Statement, while Stumpf and Velde filed a Motion to Dismiss. On November 23, 2013, this Court dismissed the claims against Velde and Stumpf and

---

[2] The mediation was unsuccessful and concluded in July 2012. Def.'s Mot. to Dismiss Ex. 9–10, Aug. 21, 2014, ECF No. 31–1. Wells Fargo contends that they modified Plaintiff's loan after Plaintiff initiated litigation in this Court. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss 2, Sept. 29, 2014, ECF No. 37.

granted Defendant Wells Fargo's Motion for a More Definite Statement. *See generally* Order Granting Def.s' Mot. to Dismiss; Order Granting Def. Wells Fargo's Mot. for More Definite Statement, ECF No. 20.

On December 23, 2013, Plaintiff filed an Amended Complaint (ECF No. 21) pursuant this Court's order. *See* Order for a More Definite Statement, ECF No. 20. Plaintiff's first count sought to pursue a cause of action under HAMP guidelines. 12 U.S.C. § 5219(a); *see* Am. Compl. 17, 25, ECF No. 21. Plaintiff alleged that Wells Fargo unnecessarily delayed her mortgage modification and did not credit her account with $18,000 in Trial Payment Plan ("TPP") payments. Am. Compl. 13–15, 23, ECF No. 21. In her second count, Plaintiff asserts that Wells Fargo violated the Fair Housing Act (FHA), Title VIII of the Civil Rights Act , 42 U.S.C. § 3601 *et seq.* Am. Compl. 25, ECF No. 21.

Defendant subsequently filed the pending Motion to Dismiss. Def.'s Mot. to Dimiss, ECF No. 31. Defendant argues that the HAMP does not provide a private cause of action, that Plaintiff failed to allege facts to establish a plausible claim that she was discriminatorily targeted under the Fair Housing Act, and that Plaintiff's claims are barred by *res judicata. See generally* Def.'s Mot. to Dismiss Ex., ECF No. 31–1.

Plaintiff filed a response, *see* Pl.'s Resp. to Mot. to Dismiss, ECF. No 33, and a supplemental response, *see* Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 36, to Defendant's Motion to Dismiss. Defendant's reply argued that Plaintiff sustained relief after bargaining over terms and voluntarily executing a loan modification after the initiation of litigation in this Court. *See* Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 37.

While Defendant's Motion to Dismiss remained pending, Plaintiff filed numerous motions to compel discovery answers and proceed to a jury trial. *See generally* Pl.'s Mot. to Proceed to Jury Trial, ECF No. 38; Pl.'s Mot. to Have Questions Answered and Jury Trial Date Set, ECF No. 39; Pl.'s Mot. to Schedule a Hr'g and Add Defendant, ECF No. 40. In addition, Plaintiff wishes to pursue mediation. Pl.'s Mot. for Emergency Mediation, ECF No. 41.

STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are

not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). In the context of *pro se* litigants, however, pleadings are "to be liberally construed," and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *accord Brown v. N.C. Dept. of Corr.*, 612 F.3d 720, 724 (4th Cir. 2010).

Second, even a *pro se* complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (recognizing no *pro se* exception to the requirement to plead a "plausible claim for relief"); *see also O'Neil v. Ponzi*, 394 F. App'x. 795, 796 (2d Cir. 2010) (unpublished) ("We must dismiss *pro se* complaints that are frivolous or fail to state a claim."). Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, — F.3d —, 2015 WL 1088931, *4 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only

*allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)).  In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.  *Iqbal*, 556 U.S. at 679.  "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal."  *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).


<u>ANALYSIS</u>

In her Amended Complaint, Plaintiff alleges two counts of breach of contract. In her first count, Plaintiff sought to pursue a cause of action under HAMP guidelines.  12 U.S.C. § 5219(a); *see* Am. Compl. 17, 25, ECF No. 21.  In her second count, Plaintiff asserts that Wells Fargo violated the Fair Housing Act, Title VIII of the Civil Rights Act , 42 U.S.C. § 3601 *et seq.*  Am. Compl. 25, ECF No. 21.  In response, Defendant asserts that *res judicata* bars Plaintiff's claims.  Def.'s Mot. to Dismiss 6–10, ECF No. 31–1.  In addition to her Amended Complaint, Plaintiff filed numerous motions to add defendants, compel discovery, and request emergency mediation. *See generally* Pl.'s Mot. to Proceed to Jury Trial, ECF No. 38; Pl.'s Mot. to Have Questions Answered and Jury Trial Date Set, ECF No. 39; Pl.'s Mot. to Schedule a Hr'g and Add Defendant, ECF No. 40;  Pl.'s Mot. for Emergency Mediation, ECF No. 41.

## I. Home Affordable Modification Program Breach of Contract Claim

Plaintiff explicitly attempts to file a private cause of action based on the Home Affordable Modification Program's ("HAMP") guidelines.[3]  Am. Compl. 28–31, ECF No. 21.  As will be explained below, this Court liberally construes the thrust of Plaintiff's argument as asserting that the Trial Payment Plan ("TPP") constituted a contract between her and Wells Fargo and that Wells Fargo breached the contract when it failed to modify her loan.  Am. Compl. 13, ECF No. 21.  In addition to emotional hardship, Plaintiff alleges that she suffered fees imposed by the bank, that $18,000 of her TPP payments were not credited to her mortgage, and that her credit score was negatively affected by Wells Fargo's failure to perform.  *See generally* Am. Compl., ECF No. 21.  Plaintiff also prays for $458,000 and attorney's fees.  *Id. at* 28–29.

### A. Private Right of Action under Home Affordable Modification Program Guidelines

Plaintiff clearly attempts to pursue a private right of action under HAMP guidelines in her status as a third party beneficiary of the program.  *See* Am. Compl. 1, ECF No. 21 (identifying 12 U.S.C. §§ 5201, 5211, 5213, 5219, 5225 as the basis of her first claim); *see also*

---

[3] As Judge Blake recently explained:
> "the Home Affordable Modification Program ("HAMP") [is] a program established by the Treasury Department under the Troubled Asset Relief Program ("TARP"). The purpose of HAMP was to help '3 to 4 million at-risk homeowners—both those who are in default and those who are at imminent risk of default' avoid foreclosure 'by reducing monthly payments to sustainable levels.' (HAMP Suppl. Directive 09–901 at 1 . . .) HAMP allows at-risk homeowners to obtain permanent loan modifications, by which their monthly mortgage payments are reduced to not more than 31 % of their monthly income for a period of at least five years."

Participation for non-government sponsored entities ("GSE") like Wells Fargo is voluntary but comes with some restrictions:
> "Non–GSE mortgage servicers that elect to participate in HAMP are required to enter into a Servicer Participation Agreement ("SPA") with the federal government, which expressly incorporates the HAMP guidelines, procedures, and supplemental directives issued by the Treasury Department. Mortgage servicers receive $1,000 from the government as an incentive payment for each permanent loan modification they offer."

*Allen v. CitiMortgage, Inc.*, No. CIV. CCB-10-2740, 2011 WL 3425665, at *1 (D. Md. Aug. 4, 2011).

*id.* at 17–20, 28–31.   As this Court previously noted, Congress did not "create a private right

of action to enforce the HAMP guidelines."  *See Allen v. CitiMortgage, Inc.*, No. CIV. A. CCB–

10–2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011).   Indeed, courts have "universally

rejected" claims asserting entitlement to permanent loan modifications under HAMP

itself.  *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. CIV. A. 10–0670–HEH, 2011 WL

1306311, at *3 (E.D. Va. April 1, 2011).

Courts in this district, however, have held enforcement of the TPP, if one exists, may

give rise to a private right of action separate from HAMP.  *See Stovall v. SunTrust Mortg., Inc.*,

No. CIV. A. RDB–10–2836, 2011 WL 4402680, at *11 (D. Md. Sept. 20, 2011); *Allen*, 2011

WL 3425665, at *4.  As recently explained by this Court:

> The HAMP loan modification process occurs in two steps. First, the mortgage
> servicer determines whether the borrower is eligible to participate in HAMP.
> If a mortgage servicer determines that the borrower is eligible for HAMP, the
> servicer may offer the borrower a three-month Trial Period Plan ("TPP"),
> during which the borrower pays reduced mortgage payments. If all of the
> conditions of the TPP Agreement are satisfied, the borrower may then
> proceed to step two of the process, at which point he or she is offered a
> permanent loan modification.

*Allen*, 2011 WL 3425665, at *1.  Additionally, this Court has held that "even if a private right

of action does not exist under HAMP, [a plaintiff] may be permitted to assert a breach of

contract claim stemming from the TPP Agreement as long as they have stated a proper claim

in their amended complaint." *Allen*, 2011 WL 3425665, at *5.

Despite Letke's explicit though impermissible attempt to enforce HAMP's guidelines,

the thrust of her claim stems from Wells Fargo's failure to extend her a loan modification.

Accordingly, Plaintiff may pursue a private cause of action for breach of contract under the

TPP provided she alleged a plausible breach of contract claim.

9

### B. Formation of Contract

To state a claim for breach of contract under Maryland law, a plaintiff must allege that the defendant "owed [her] a contractual obligation and that [they] breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645 (2001). Maryland courts look to the common law to determine whether a contract has been formed. *Maryland Supreme Corp. v. Blake Co.*, 279 Md. 531, 539, 369 A.2d 1017, 1023 (1977). It is clear that "[a]n offer must be definite and certain." *Id.* To be capable of being converted into a contract by acceptance, an offer "must be made under circumstances evidencing an express or implied intention that its acceptance shall constitute a binding contract." *Id.* When an offer is made by one party, a contract may only be formed if acceptance of the offer is expressed by the offeree. *Transpacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.*, No. CIV. A. DKC-06-0187, 2010 WL 1375292, at *8 (D. Md. Mar. 30, 2010) (citing *Maryland Supreme Corp.*, 279 Md. at 539). Consideration must be exchanged between the parties in order to assure that the promise was not illusory. *Id.* Significantly, the United States Court of Appeals for the Fourth Circuit recently implied that the existence of a TPP creates privity of contract. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 775 (4th Cir. 2013). When a party to the contract breaches the terms in a material way, the injured party is entitled to recover damages. *Transpacific Tire & Wheel, Inc.*, 2010 WL 1375292 at *9.

The five-page TPP form contains definite and certain terms, as evidenced by the fact that Wells Fargo uses this form with thousands of individuals to initiate loan modifications. It is plausible that the 2010 TPP constituted an offer because it invited acceptance by the Plaintiff to a binding contract. The TPP contained two conditions precedent to Wells

Fargo's obligation to offer a permanent modification: Letke had to comply with the requirements of the trial plan by making timely monthly payments in full, and her financial information had to remain true and accurate. Am. Compl. 46, ECF No. 21-1. These were conditions to be satisfied by Letke, as offeree, rather than conditions requiring further manifestation of assent by Wells Fargo, as offeror. Plaintiff alleges that she satisfied these conditions by making timely payments in full for the duration of the 2010 TPP. Am. Compl. 13, ECF No. 21. Letke's three payments, moreover, constituted adequate consideration to bind the parties to the contract because they demonstrate the concrete nature of Wells Fargo's offer.

Considering these factors in light of the Fourth Circuit's suggestion that the TPP creates privity of contract, this Court finds that Plaintiff alleges a plausible claim that the TPP constituted a contract between her and Wells Fargo for a permanent loan modification. *Accord WiGod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 562 (7th Cir. 2012).

*C. Breach of Contract*

As noted above, Plaintiff alleges that Wells Fargo offered her a Trial Payment Plan and that she made timely payments under the plan in the following months. Am. Compl. 13, 30, ECF No. 21. Plaintiff further alleges that despite her payments, Wells Fargo refused to permanently modify her loan and in fact initiated foreclosure proceedings against her. *Id.* at 14. Accordingly, Plaintiff has plausibly alleged that Wells Fargo breached the TPP because it did not modify Plaintiff's loan after her successful completion of the three-month trial period in 2010. *Id.* at 13.

Wells Fargo does not address Plaintiff's allegations other than to assert that Plaintiff eventually received a loan modification which negated any damages she may have suffered. Def.'s Mot. to Dismiss 6, ECF No. 31.  It is not clear that the eventual loan modification, which took place over two years after the original TPP and after Letke filed the instant matter in this Court, remedied Plaintiff's alleged injuries.[4]  As a result, Defendant's motion to dismiss Plaintiff's private action for breach of contract under the Trial Payment Plan is DENIED.

---

[4] There are generally three types of damages: compensatory damages, nominal damages, and punitive damages.

    Maryland follows the rule that upon breach of contract, the non-breaching party is entitled to compensatory damages which are the natural and proximate consequence of the breach, or which are reasonably within the parties' contemplation at the time of contracting. *See Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854); *e.g.*, *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 342, 624 A.2d 496 (1993). The measure of compensatory damages is the sum which would place the injured party in the same position as if the contract had been performed. *Beard v. S/E Joint Venture*, 321 Md. 126, 133, 581 A.2d 1275 (1990).  In Maryland, compensatory damages must be proved with "reasonable certainty, and may not be speculation or conjecture." *Asibem Associates, Ltd. v. Rill*, 264 Md. 272, 276, 286 A.2d 160, 162 (1972).  Plaintiff may recover nominal damages "even though [she] fails to prove [compensatory] damages." *Hooton v. Kenneth B. Mumaw Plumbing & Heating Co.*, 271 Md. 565, 572, 318 A.2d 514, 518 (1974).

    Maryland law permits recovery of compensatory damages for mental pain and suffering in an action for breach of contract *only if* the breach also causes bodily harm or the breach is of such a kind that serious emotional disturbance is a particularly likely result. *Munday v. Waste Mgmt. of N. Am.*, 997 F. Supp. 681, 685 (D. Md. 1998) (citing *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239 (4th Cir. 1997)).  In *Munday*, the Court found that the defendant's retaliatory breach of a sexual-harassment settlement agreement was likely to induce "severe emotional distress." *Id.* at 687.  The defendant in *Munday* was aware that its sexual harassment of the plaintiff caused her emotional problems. *Id.*  Thus, the Court concluded that the defendants would reasonably know that breach of the settlement agreement would cause further emotional distress. *Id.*  In the case *sub judice*, Plaintiff failed to adequately allege facts to establish that Wells Fargo's acted with any malicious intent.  Moreover, Plaintiff did not allege that Wells Fargo knew their alleged breach of contract would cause Plaintiff severe emotional distress.  Accordingly, Wells Fargo's alleged breach of contract is not "of such a kind that serious emotional disturbance" is likely and Plaintiff may not recover compensatory damages for mental pain and suffering. *Id.*

    Under Maryland law, a court may not award punitive damages for a non-intentional tort unless the plaintiff has established that the defendant's conduct was characterized by "actual malice." *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 454, 601 A.2d 633, 650 (1992).  Actual malice is "the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Drug Fair of Md., Inc. v. Smith*, 263 Md. 341, 352, 283 A.2d 392, 398 (1971).  Maryland has limited "the availability of punitive damages to situations in which the defendant's conduct is characterized by knowing and deliberate wrongdoing." *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 228, 652 A.2d 1117, 1123 (1995).  Thus, here, Plaintiff must sufficiently allege that Wells Fargo maliciously refused to modify her loan.  As the Court will discuss *infra*, Plaintiff has not pled facts that Wells Fargo acted with "an evil or rancorous motive influenced by hate" beyond the speculative level.  Accordingly, breach of contract is the sole claim that remains pending before the Court and "punitive damages are not available in a pure action for breach of contract." *See Munday*, 997 F. Supp. at 685 (citing *St. Paul at Chase Corp. v. Mfrs. Life Ins. Co.*, 262 Md. 192, 278 A.2d 12 (1971)).

**II. Fair Housing Act Claim**

Plaintiff asserts three claims under the Fair Housing Act.  First, Plaintiff alleges that Wells Fargo discriminated against her because she was a woman living in Baltimore City. Am. Compl. 25, ECF No. 21.  Second, Plaintiff argues that Wells Fargo did not grant her loan modification due to her status as the owner of a female-owned business.  *Id.* at 19. Finally, Plaintiff asserts that Wells Fargo discriminated against African-Americans in Baltimore, specifically zip code 21206.  *Id.* at 25.

The Fair Housing Act provides a right of action for private citizens against those who discriminate against them in the housing market.  *See* 42 U.S.C. § 3613(a) (2015).   Under the Fair Housing Act, it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."  42 U.S.C. § 3605(a).  A plaintiff must allege that they were discriminated against within the meaning of the Fair Housing Act by showing either discriminatory intent or discriminatory impact. *Robinson v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty., MD*, No. CIV. A. RDB-07-1903, 2008 WL 2484936, at *9 (D. Md. June 19, 2008) (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984)).

*A. Discriminatory Intent*

To allege discriminatory intent under the FHA, a plaintiff may either offer direct evidence of discrimination or invoke the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework.  *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451

(4th Cir. 1990).  In this context, "[d]irect evidence encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested [housing] decision." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)) (internal quotation marks omitted).

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff need not show that discriminatory animus was the primary or dominant purpose, but only that it was a motivating factor.  *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996). At trial, if the plaintiff can establish that the defendant's action was based, at least in part, on discriminatory animus, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for their actions.  *McDonnell Douglas*, 411 U.S. at 802–05.  After the defendant establishes a legitimate, nondiscriminatory reason for its actions, the burden returns to the plaintiff to rebut that reason as mere pretext.  *Id.*  However, a plaintiff "need not need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," *Swierkiewicz*, 534 U.S. at 515.  While a plaintiff is not required to plead facts that constitute a prima facie case of discrimination in order to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly v. Iqbal*, 550 U.S. at 555; *accord McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, — F.3d —, No. 13-2488, 2015 WL 1088931, at *3 (4th Cir. Mar. 13, 2015).

Plaintiff shows neither direct evidence of discriminatory intent nor a plausible basis for discrimination under the *McDonnell Douglas* standard.  First, she alleges no facts indicating that Wells Fargo's conduct or statements pertaining to loan modification reflected a

discriminatory attitude and bore directly on the loan modification.   Further, there are no allegations that Wells Fargo allegedly gave preferential treatment to minority or male applicants.   *See Boykin v. KeyCorp*, 521 F.3d 202, 214–15 (2d Cir. 2008) (explaining that plaintiff's complaint was plausible because she alleged that other similarly situated non-minority applicants received a loan, while plaintiff, a black female, did not).

Second, Plaintiff did not plead a plausible basis for discrimination because she has not alleged facts indicating that discriminatory animus was a motivating factor in Wells Fargo's decision to deny Letke's loan modification.   Moreover, Plaintiff's allegations that she was discriminated against as the owner of a woman-owned business may be dismissed because Wells Fargo issued a loan to her as an individual, not to her business.   There are no facts alleged in the Amended Complaint that lay the foundation for a plausible claim that Plaintiff's status as a female owner of a business had any bearing on Wells Fargo's loan modification to Plaintiff in her individual capacity.

### B. Discriminatory Impact

To allege discriminatory impact under the FHA, a plaintiff must show that a specific policy caused a significant disparate effect on a protected group.   *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).   A plaintiff must identify the neutral practice at issue and cite statistical evidence demonstrating the discriminatory impact caused by the practice.   *Id.* Plaintiffs, as members of a discrete minority, are required to prove "that a given policy had a discriminatory impact on them as *individuals*."   *Betsey*, 736 F.2d at 987 (emphasis in original). After a plaintiff makes this initial showing, the burden shifts to the defendant, to "prove a business necessity sufficiently compelling to justify the challenged practice."   *Id.* at 988.

Letke alleges that Wells Fargo's facially nondiscriminatory loan programs had a discriminatory impact on African-Americans in Baltimore, specifically in the 21206 zip code. Am. Compl. Ex. 9–29, ECF No. 21–1.   It is unclear, however, how these alleged discriminatory practices affect Plaintiff as an individual.   According to her Amended Complaint, Ms. Lekte is a white female; therefore, she is not a member of the discrete African-American minority that was subject to Wells Fargo's alleged discrimination.   *Id.*   In addition, Plaintiff has not lived in the 21206 zip code, the neighborhood identified in the Amended Complaint, since 2006.   *Id.* at 13.   The loan modification at issue in this litigation concerns a mortgage in the 21085 zip code of Joppa, Maryland.   *Id.*   Finally, Plaintiff failed to allege any facts that demonstrate that Wells Fargo's policies had a discriminatory impact on women compared to similarly situated men.

Plaintiff fails to plead facts that raise her right to relief beyond the speculative level that discriminatory intent motivated Wells Fargo's lending policies or that Wells Fargo's lending policies resulted in discriminatory impact on Letke as an individual.   Accordingly, Defendant's motion to dismiss Plaintiff's Fair Housing Act claim is GRANTED.

## III. *Res Judicata* Defense

Wells Fargo argues that Letke's claims are barred by *res judicata* and collateral estoppel, also known as claim preclusion and issue preclusion.   In other words, Wells Fargo claims that Letke cannot bring this action as a matter of law because the claims and issues relevant to this action were decided in the Circuit Court for Harford County, Maryland.   In support of its claim, Wells Fargo submitted a docket from the Harford County Circuit Court. Def.'s Mot. to Dismiss Ex. 15–18, ECF No. 31–1.

*A. Claim Preclusion*

The principle of claim preclusion "was designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Strickland v. Carroll Cnty., Md.*, No. CIV. A. ELH-11-00622, 2012 WL 401075, at *13 (D. Md. Feb. 7, 2012) (unreported) (quoting *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161–62 (4th Cir. 2008)). The elements of claim preclusion are as follows:

> "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the current suit presents the same cause of action or claim(s) as the earlier suit; and (3) there has been a valid final judgment on the merits by a court of competent jurisdiction."

*Colandrea v. Wilde Lake Comm. Ass'n.*, 361 Md. 371, 392, 761 A.2d 899, 910 (2000). The elements of claim preclusion under federal law are analogous to those under Maryland law. *See Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003).

First, it is unclear from the docket that the parties in the present litigation, Plaintiff Kimberly Letke and Defendant Wells Fargo, were both litigants in the Harford County Court. *See* Def.'s Mot. to Dismiss 15–18 Ex., ECF No. 31–1. In Harford County Court, six plaintiffs, all individuals, filed a claim against Ms. Letke as a Defendant. *Id.* at 15. Wells Fargo's name does not appear in the docket sheet. *Id.* at 15–18. Defendant also failed to establish that these individuals were in privity with Wells Fargo or Ms. Letke.

Second, it is unclear from the docket that the current suit presents the same claims as the Harford County litigation. From the envelope information presented by the docket report, it appears that the Harford County matter concerned foreclosure and resulted in mediation. *Id.* at 15–18. Plaintiff's pending claim before this Court is breach of contract.

*See generally* Am. Compl., ECF No. 21.  Wells Fargo failed to establish that the breach of contract claim was previously litigated.

Third, it is unclear whether a final judgment on the merits was made by the Harford County Court and it is unclear whether that court had proper jurisdiction.  The final entry in the docket report is entitled, "Notice of Contemplated Dismissal Lack of Jurisdiction/ Prosecution."  Def.'s Mot. to Dismiss Ex. 18, ECF No. 31–1.  There is no evidence that the court issued a final judgment, nor that any such judgment related to the breach of contract claim.  Furthermore, the title of the docket entry raises serious questions regarding whether the Harford Circuit Court had proper jurisdiction.

Wells Fargo failed to establish all three requirements of claim preclusion.  As a result, this Court declines to dismiss Plaintiff's Amended Complaint on the basis of *res judicata*.

B. *Issue Preclusion*

Issue preclusion forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate."  *Virginia Hosp. Ass'n. v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987).  For issue preclusion to apply, the movant must establish that:

> "(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum."

*Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994) (internal quotation omitted).

First, as discussed *supra*, Wells Fargo failed to establish that breach of contract was previously litigated. Second, there is no indication that this issue was actually determined in the Harford County Circuit Court. Third, there is no evidence in the record that issues relating to breach of contract were critical or required to the foreclosure mediation. Fourth, as discussed above, it is unclear whether a final and valid judgment was ever issued by the court. Fifth, a docket report concerning foreclosure mediation does not convince this Court that Plaintiff had a full and fair opportunity to litigate in the Harford County.

Defendant failed to establish that the proceedings in Harford County decided the issues in the present litigation, as required by issue preclusion. As a result, this Court declines to dismiss Plaintiff's Amended Complaint on the basis of collateral estoppel.

## IV. Plaintiff's Claims against Velde and Stumpf

Plaintiff included claims against Stumpf and Velde in her original Complaint. *See* Compl., ECF No. 1. This Court has already dismissed Velde and Stumpf from the instant litigation. *See* Order granting Def.s' Mot. to Dismiss, ECF No. 20. Plaintiff subsequently moved the Court to reconsider the dismissal of Velde and Stumpf, *see generally* Pl.'s Mot. to Reconsider, ECF No. 24, which the Court denied. *See generally* Order denying Pl.'s Mot. to Reconsider, ECF No. 25. Despite two previous Court orders, Plaintiff attempts to add Stumpf as a defendant in her Motion to Schedule a Hearing and Add Defendant (ECF No. 40). Plaintiff reiterates her claims that Stumpf is liable in his capacity as CEO of Wells Fargo. *See id.*

As a result of this Court's November 11, 2013 order, Mr. Velde and Mr. Stumpf are no longer before this Court. Moreover, as this Court previously noted, Plaintiff's claim fails

as a matter of law.   Mem. Op. 8, ECF No. 19.   Therefore, Plaintiff's Motion to Add

Defendant (ECF No. 40) in DENIED.

## V. Plaintiff's Motion to Proceed to Jury Trial, Motion to Have the Questions Answered, and Motion to Have Jury Trial Date Set

While Defendant's Motion to Dismiss remained pending, Plaintiff filed numerous

motions to compel discovery answers and proceed to a jury trial.   *See generally* Pl.'s Mot. to

Proceed to Jury Trial, ECF No. 38; Pl.'s Mot. to Have Questions Answered and Jury Trial

Date Set, ECF No. 39; Pl.'s Mot. to Schedule a Hr'g and Add Defendant, ECF No. 40.

Under the Local Rule 104, "discovery shall not commence and disclosures need not be made

until a scheduling order is entered."   Local Rule 104(4) (D. Md. 2014).   These motions are

premature because the Court has not issued a scheduling order. Plaintiff's motions to

compel discovery answers and proceed to a jury trial are therefore DENIED.

After this Court issues a scheduling order, discovery may commence.   Plaintiff's

breach of contract claim under the Trial Payment Plan remains the sole claim pending before

this Court, so the scope of discovery shall be limited to information concerning Plaintiff's

breach of contract claim pursuant to Fed. R. Civ. P. 26(b).

Finally, the Court notes that it is incumbent upon the parties to be familiar with the

Discovery Guidelines.   Local Rule 104(12) (D. Md. 2014).   *Pro se* litigants must adhere to the

Federal Rules of Civil Procedure and the Local Rules governing the discovery process.   *W. v.*

*A Black Male Sergeant*, No. CIV. A. MJG-92-280, 1993 WL 307695, at *1 (D. Md. Mar. 1,

1993) *aff'd*, 996 F.2d 1213 (4th Cir. 1993).   In accordance with these Rules, this Court will

not intervene in discovery matters until the parties have shown that a dispute exists with

regard to exchange and private efforts made by the parties to cooperate have been unsuccessful. *See, e.g.*, Local Rule 104 (D. Md. 2014).

**VI. Mediation**

Plaintiff has requested emergency mediation.  *See generally* Pl.'s Mot. for Emergency Mediation and/or Proceed to a Jury Trial and/or Award Letke $458,000, ECF No. 41. Defendant must notify the Court within ten days of the date of this Opinion and Order whether Defendant agrees to mediation.

CONCLUSION

For the reasons stated above, Wells Fargo's Motion to Dismiss (ECF No. 31) Plaintiff's breach of contract under the Trial Payment Plan is DENIED.  Wells Fargo's Motion to Dismiss Plaintiff's discrimination claims under the Fair Housing Act is GRANTED.  Plaintiff's Motion to Proceed to Jury Trial (ECF No. 38), Motion to Have Questions Answered and Jury Trial Date Set (ECF No. 39), and Motion to Schedule a Hearing and Add Defendant (ECF No. 40) are DENIED. Plaintiff's Motion for Emergency Mediation and/or Proceed to a Jury Trial and/or Award Letke $458,000 (ECF No. 41) is DENIED IN PART. Specifically, the motion is denied with respect to Plaintiff's request to proceed to a jury trial or award Plaintiff $458,000; however, Defendant must notify the Court within ten days of the date of this Opinion and Order whether Defendant agrees to mediation.

A separate Order follows.

Dated: March 27, 2015                                   _____/s/_____

                                                        Richard D. Bennett

                                                        United States District Judge