IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIMBERLY LETKE,                    *

    Plaintiff,                    *

      v.                    *          Civil Action No. RDB-12-3799

WELLS FARGO                    *
HOME MORTGAGE, INC.,

    Defendant.                    *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Kimberly Letke ("Plaintiff" or "Letke"), proceeding *pro se*, brings this action against Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), alleging breach of contract under the Home Affordable Modification Program ("HAMP"), 12 U.S.C. § 5219(a), *et. seq.*[1] Essentially, Letke claims that Wells Fargo, by offering Letke a Trial Payment Plan ("TPP"), breached its alleged obligation to extend her a permanent loan modification.

Presently pending is Defendant Wells Fargo Home Mortgage Inc.'s Motion for Summary Judgment (ECF No. 76). The Court has reviewed the parties' submissions and finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Wells Fargo Home Mortgage Inc.'s Motion for Summary Judgment (ECF

---

[1] In her Complaint (ECF No. 1), Letke also asserted a claim under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.* After Wells Fargo filed a Motion to Dismiss the Amended Complaint (ECF No. 31), this Court granted Wells Fargo's Motion as to the FHA claim, but allowed the HAMP breach of contract claim to proceed. *See* Mem. Op., ECF No. 42; Order, ECF No. 43.

No. 76) is GRANTED. Accordingly, judgment is entered in favor of the Defendant as a matter of law.

<u>BACKGROUND</u>

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Yet, this Court also notes that Letke, in attempting to create a genuine issue of material fact, submitted hundreds of pages of exhibits with varying degrees of relevance to the pending Motion for Summary Judgment. *See* Pl.'s Resp. in Opp'n Ex. 1, ECF No. 80-1. She does not coherently identify *any* facts or portions of the submitted documents that could create a dispute of material fact, essentially leaving to this Court "the unenviable task of poring over [voluminous] pages of . . . exhibits in search of bits of evidence that could preclude summary judgment[.]" *Johnson v. U.S.*, 861 F. Supp. 2d 629, 635 (D. Md. 2012) (quoting *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 395 (4th Cir. 1994)).

The background facts of this action were fully set forth in this Court's Memorandum Opinion of March 27, 2015 (ECF No. 42). After a period of discovery, the undisputed facts are as follows:[2] Plaintiff purchased a property located at 1607 Bridewells Court, Joppa, Maryland 21085 (the "Property") for $380,000 in 2006. Am. Compl. 13, ECF No. 21.  She made a $130,000 down payment and mortgaged the $250,000 balance through Wells Fargo.

---

[2] Indeed, this Court may grant summary judgment in favor of Defendant on this ground alone. *See Johnson*, 861 F. Supp. 2d at 635 (quoting *Cray Commc'ns*, 33 F.3d at 395-96) (a court is "well within its discretion in refusing to ferret out the facts that [the party] ha[s] not bothered to excavate"); *see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it . . .").

*Id.*; *see also* Kruse Aff. ¶ 3, ECF No. 76-2.[3] Plaintiff committed to $2,568 in monthly mortgage payments. *Id.* In early 2009, Letke defaulted on her loan payment obligation. *Id.* ¶ 4. Although Wells Fargo reviewed her circumstances on several occasions throughout 2009, she was not approved for a Trial Payment Plan ("TPP") under HAMP[4] until March 29, 2010. *Id.* ¶ 8; *see also* Kruse Aff. Ex. D, ECF No. 76-6 (TPP Documents).

Under the terms of the TPP, Letke was required to submit: (1) "Two copies of the enclosed Trial Period Plan signed by all borrowers; (2) her "first month's trial period payment set forth in the" TPP; (3) "The enclosed Hardship Affidavit completed and signed by all borrowers[;]" (4) "A signed and dated copy of the IRS Form 4506T (Request for Transcript of Tax Return) for each borrower[;]" and (5) "Documentation to verify all of the income of each borrower." Kruse Aff. Ex. D., at 5. If Letke was unable to provide the requested documents by May 1, 2010, then the TPP required that she apply for an extension. *Id.* On April 20, 2010, Wells Fargo sent a Request for Additional Information to Letke due to her failure to provide the requisite documentation. Kruse Aff. ¶ 9; Kruse Aff. Ex. E, ECF No. 76-7. The Request for Additional Information extended the submission deadline to May 20, 2010. Kruse Aff. Ex. E.

The following day, Wells Fargo received an undated copy of the TPP signed by Letke. Kruse Aff. ¶ 10; Kruse Aff. Ex. F, ECF No. 76-8. In addition to signing the TPP,

---

[3] Andrea Kruse is a Vice President, Loan Modification at Wells Fargo. Kruse Aff. ¶ 2.

[4] As this Court explained: in its Memorandum Opinion (ECF No. 42), the Home Affordable Modification Program allows homeowners who are in default or face an imminent risk of default to avoid foreclosure by obtaining permanent loan modifications that reduce monthly payments. The Trial Payment Plan is a ninety-day period during which individuals interested in loan modification may pay the modified mortgage price. If the mortgagor fulfills the conditions of the TPP, the loan modification may become permanent. *See Allen v. CitiMortgage, Inc.*, Civ. A. No. CCB-10-2740, 2011 WL 345665, at *1 (D. Md. Aug. 4, 2011) (discussing the purpose and requirements of HAMP).

Letke had crossed out and initialed certain paragraphs. Kruse Aff. Ex. F, at 3. Wells Fargo did not execute the modified TPP copy. Kruse Aff. ¶ 10. Apart from a letter dated April 13, 2010,[5] and trial payments for May, June, and July 2010, Letke did not provide any further TPP-required documentation by the May 20, 2010 deadline. Kruse Aff. ¶ 10.

On September 1, 2010, Wells Fargo sent Plaintiff a letter denying a permanent modification under HAMP due to her failure to provide the requested documentation. Kruse Aff. ¶ 13; Kruse Aff. Ex. H, ECF No. 76-10. Two days later, Wells Fargo sent Plaintiff a second letter in which it requested certain documents by September 18, 2010 in order to determine her eligibility for a non-HAMP loan modification.[6] Kruse Aff. ¶ 14; Kruse Aff. Ex. I, ECF No. 76-11. On September 17, 2010, Wells Fargo received a copy of Letke's 2009 tax returns, a letter discussing a pending lawsuit, and an incomplete, unexecuted "Financial Worksheet." Kruse Aff. ¶ 15; Kruse Aff. Ex. J, ECF No. 76-12 (September 17, 2010 submissions). Due to Letke's failure to provide the requisite documentation, Wells Fargo denied the non-HAMP modification on September 20, 2010. Kruse Aff. ¶ 16; Kruse Aff. Ex. K, ECF No. 76-13.

After the denial of the non-HAMP modification, Plaintiff continued to seek a permanent loan modification. Kruse Aff. ¶ 17. Finally, in March 2013, Wells Fargo approved Letke for a permanent modification plan. Kruse Aff. ¶ 18; *see also* Kruse Aff. Ex. L, ECF No.

---

[5] In the April 13, 2010 letter, Letke appears to discuss the TPP offer and certain issues related to the Property, but makes no reference to the outstanding TPP documents. Kruse Aff. Ex. G, ECF No. 76-9.
[6] The requested documents were:
1. Financial Worksheet
2. Tax Return for 2009
3. Proof of Income (paystub, SSI, child support)
4. Profit & Loss Statement, if self-employed
5. Hardship Explanation
Kruse Aff. Ex. I, at 2.

76-14. The loan modification took effect on April 23, 2013. *See* Kruse Aff. ¶ 18; Kruse Aff. Ex. L. Prior to the execution of this modification plan, Plaintiff filed the instant action on December 27, 2012 against Defendants Wells Fargo, John Stumpf ("Stumpf"), and Adam Velde ("Velde").[7] *See generally* Compl. While the present action was pending in this Court, Letke filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701, *et seq.*, in the United States Bankruptcy Court for the District of Maryland on June 5, 2013.[8] *See* Def.'s Mot. for Summ. J. Ex. 2, ECF No. 76-15 (Bankruptcy Docket Sheet). Letke did not list this pending action and claims in her bankruptcy filings. *See* Def.'s Mot. for Summ. J. Ex. 3, ECF No. 76-16 (Petition Schedules). The Bankruptcy Court issued an Order Discharging the Debtor on September 16, 2013, and then a final decree closing Letke's bankruptcy estate on October 7, 2013. *See* Def.'s Mot. for Summ. J. Ex. 2. Letke subsequently moved to reopen the bankruptcy case on July 15, 2015, but the Bankruptcy Court denied her motion without prejudice. *See id.*

Defendant subsequently filed the pending Motion for Summary Judgment (ECF No. 76) on the sole remaining breach of contract claim.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law."

---

[7] By Order dated November 23, 2013 (ECF No. 20), this Court dismissed all claims against Velde and Stumpf.

[8] Letke was represented by counsel in her bankruptcy action. *See id.*

*Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.   When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.   *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.   *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).   In so doing, this Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.   *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).   If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.   *Anderson*, 477 U.S. at 249-50.   On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see*

*also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

<u>ANALYSIS</u>

In moving for judgment as a matter of law on the remaining claim for breach of contract, Wells Fargo asserts three arguments for this Court's consideration. First, Wells Fargo contends that, as Letke did not comply with the TPP documentation request, she either did not accept the TPP offer, or accepted the offer, but did not perform under the contract. Second, Wells Fargo argues that Letke waived the subject breach of contract claim when she executed a permanent loan modification agreement with Wells Fargo on April 23, 2013. Finally, Wells Fargo asserts that judicial estoppel bars Letke's claim, as she did not identify the present action and constituent claims in her bankruptcy action. This Court will address each argument in turn.

**A. Failure to Comply With TPP Conditions**

First, Wells Fargo argues that Letke's failure to submit the requisite documents under the TPP obviated any obligation of Wells Fargo to extend her a permanent loan modification. Wells Fargo contends that Letke's failure may be construed as a lack of acceptance of the TPP offer or a failure to perform under the contract created by the TPP. Under either construction, Wells Fargo owed Letke no contractual obligation to modify permanently her loan. As Plaintiff never accepted the TPP offer, no contract was formed. Thus, this Court need not address whether she performed under the TPP contract.

In Maryland, the "formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (internal citation omitted). To be effective, Maryland law "requires unqualified acceptance." *Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F. Supp. 2d 519, 524 (D. Md. 2013); *see also Fraley v. Null, Inc.*, 244 Md. 567, 572, 224 A.2d 448 (1966); *Post v. Gillespie*, 219 Md. 378, 385, 149 A.2d 391 (1959). Indeed, an acceptance that modifies or alters the terms of performance is a counteroffer, and not unqualified acceptance. *See Ebline v. Campbell*, 209 Md. 584, 121 A.2d 828 (1956).

Given Maryland's strict construction of acceptance, it is clear as a matter of law that Letke never accepted the TPP offer. The TPP clearly states that, "[t]o accept this offer," Letke had to return certain documents to Wells Fargo. A review of the undisputed facts, however, reveals that Letke clearly failed to provide the requisite TPP documents. She submitted the trial period payments, but she provided no Hardship Affidavit, copy of the IRS Form 4506T, nor any documentation verifying her income.[9] Kruse Aff. ¶¶ 10-12. Although Plaintiff *did* sign the TPP, she also modified the offer by crossing out certain language in the offer. Kruse Aff. Ex. F, at 3. Her April 13, 2010 letter added additional conditions, as she represented that she "[did] not waiver any rights." Kruse Aff. Ex. G, at 2. In fact, she specifically asked Wells Fargo to "[l]et [her] know what your offer is . . ." *Id.* At best, her correspondence and executed TPP are a conditional acceptance, and thus a counteroffer.

---

[9] As Letke was self-employed, this documentation consisted of her 2009 federal tax return with all schedules, and the most recent quarterly or yearly profit/loss statement for her business. Kruse Aff. Ex. D, at 5.

Moreover, Plaintiff identifies no facts to refute Andrea Kruse's declaration that Wells Fargo never received the requisite documentation. Yet, it is the Plaintiff's obligation to provide such facts, and not this Court's duty to scour Plaintiff's submissions. *Johnson*, 861 F. Supp. 2d at 635. As there is no genuine issue of material fact that Letke did not accept the TPP offer, Wells Fargo is absolved of any obligation to modify permanently her loan.

### B. Contractual Waiver

Second, Wells Fargo contends that Letke waived the breach of contract claim when she ultimately entered into a permanent loan modification agreement in April 2013. In Maryland, a party "waives a contractual right by intentionally relinquishing the right or engaging in conduct that warrants the inference that the right has been relinquished." *La Belle Epoque, LLC v. Old Europe Antique Manor, LLC*, 406 Md. 194, 213, 958 A.2d 269 (Md. 2008). Despite the "highly factual nature of the waiver inquiry," situations "[o]casionally" arise where "the waiver is so obvious that a ruling can be made as a matter of law." *Hovnanian Land Investment Group, LLC v. Annapolis Towne Centre at Parole, LLC*, --- Md. ----, No. 71, Sept. Term 2010, slip op. at 30-31 (filed July 20, 2011). As this Court explained, "[o]ne such situation is where the parties have entered into a new contractual relationship, replacing the agreement that allegedly was breached, with knowledge of the prior breaches." *Adam v. Wells Fargo Bank, N.A.*, Civ. A. No. ELH-09-2387, 2011 WL 3841547, at *15 (D. Md. Aug. 26, 2011) (citing, *inter alia*, *Edelstein v. Nationwide Mut. Ins. Co.*, 252 Md. 455, 461, 250 A.2d 241 (1969)).

The permanent modification agreement took effect on April 23, 2013. In executing the 2013 permanent modification, Letke necessarily agreed that "this Agreement shall

supersede the terms of any medication, forbearance, trial period plan or workout plan that [Letke] previously entered into with [Wells Fargo]." Kruse Aff. Ex. L, at 5. Despite this language, the present action is Letke's attempt to recover for an alleged breach of the earlier TPP. The 2013 modification agreement, however, explicitly bars such recovery. Letke has thus waived any claim for breach of contract under the TPP.

## C. Judicial Estoppel

On June 5, 2013, Letke filed a petition pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701, *et seq.* The Bankruptcy Court issued a discharge on September 16, 2013, and then a final decree closing the bankruptcy estate on October 7, 2013. Wells Fargo argues that Letke failed to disclose the present action and claims in her bankruptcy petition. Accordingly, she is judicially estopped from asserting the omitted claim.

Judicial estoppel is "an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary."[10] *Folio v. City of Clarksburg, W. Va.*, 134 F.3d 1211, 1217 (4th Cir. 1998) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995)). As this Court has previously noted,

> In order for judicial estoppel to apply, (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first

---

[10] Likewise, under Maryland law, judicial estoppel "looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *WinMark, L.P. v. Miles & Stockbridge*, 345 Md. 614, 623, 693 A.2d 824 (1997) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.3d 414, 419 (3d Cir. 1988) (holding that debtor's "failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect.")).

proceeding; and (4) the party must have acted intentionally, not inadvertently.

*Calafiore v. Werner Enters., Inc.*, 418 F. Supp. 2d 795, 797 (D. Md. 2006) (holding that debtor was judicially estopped from seeking certain damages stemming from claim intentionally not disclosed in bankruptcy petition) (quoting *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir. 1998)).  The United States Court of Appeals for the Fourth Circuit has also recognized, in line with the other Courts of Appeals to consider the question,  that "[j]udicial estoppel has often been applied to bar a civil lawsuit brought by a plaintiff who concealed the existence of the legal claim from creditors by omitting the lawsuit from his bankruptcy petition."  *See Whitten v. Fred's, Inc.*, 601 F.3d 231, 241-42 (4th Cir. 2010) (holding that plaintiff was not barred from bringing suit where she disclosed potential claims), *abrogated in part on other grounds by Vance v. Ball State Univ.*, --- U.S. ----, 133 S. Ct. 2434, 2443 (2013).

In a petition for personal bankruptcy, a debtor is required to list a "schedule of assets," including "all personal property of the debtor of whatever kind," and property of a bankruptcy estate is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. §§ 521(1), 541(a)(1).  This definition includes "all causes of action that could be brought by a debtor," and the duty to disclose such claims continues for the duration of the bankruptcy proceeding.  *Calafiore*, 418 F. Supp. 2d at 797 (quoting *USinternetworking, Inc. v. Gen. Growth Mgmt., Inc. (In re USinterntetworking)*, 310 B.R. 274, 281 (Bankr. D. Md. 2004)).

In this case, the first three factors identified by this Court in *Calafiore*, 418 F. Supp. 2d at 797, are easily satisfied. As Letke filed for bankruptcy *after* initiating the subject action, she certainly knew of this action's constituent claims. Yet, she did not list these potential claims

as assets in her Voluntary Petition. Def.'s Mot. for Summ. J. Ex. 3. Moreover, when listing Wells Fargo's claim with respect to the mortgage as $286,000, she did not label this claim as "contingent" or "disputed." *Id.* She thus took the factual position that she possessed no claims with respect to the Wells Fargo mortgage, in direct contradiction to the posture of the present action. The Bankruptcy Court, in issuing a final decree closing Letke's bankruptcy estate, necessarily accepted her representations in the Voluntary Petition.

Regarding the fourth factor, this Court has explained that intent in this context is shown when a plaintiff "intentionally misled the court to gain unfair advantage." *Calafiore*, 418 F. Supp. 2d at 798. In the "absence of direct evidence of intent," a court may "infer[] whether a debtor acted intentionally or inadvertently in omitting a potential claim from a bankruptcy petition." *Id.* Indeed, a "debtor's failure to satisfy [his] statutory duty to disclose is 'inadvertent' only when, in general, the debtor lacks knowledge of the undisclosed claims or has no motive for its concealment." *Id.* (quoting *Kamont v. West*, 258 F. Supp. 495, 500 (S.D. Miss. 2003)); *accord Watson v. Bank of America, N.A.*, Civ. A. No. PJM-14-1335, 2015 WL 1517405, at *3 (D. Md. Mar. 30, 2015). When the debtor's "undisclosed claim would have added assets to the bankruptcy estate," then the debtor "will usually be deemed to have had a motive to conceal those claims." *Calafiore*, 418 F. Supp. 2d at 798.

As noted *supra*, Letke clearly knew of the existence of her claims against Wells Fargo as she filed the present action nearly six months before she filed for bankruptcy. Any recovery on her claims would add value to her bankruptcy estate. As the undisclosed claims are certainly assets, this Court may infer that Letke acted intentionally in concealing her

claims. She is thus judicially estopped from asserting any and all challenges to the alleged permanent loan modification arising from the TPP.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Wells Fargo Home Mortgage, Inc.'s Motion for Summary Judgment (ECF No. 76) is GRANTED. Accordingly, judgment is entered in favor of the Defendant as a matter of law.

A separate Order follows.


Dated: October 19, 2015                    _____/s/_____
                                           Richard D. Bennett
                                           United States District Judge

13